UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRIAN STRAIGHT, | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) Cause No. 2:08-CV-00119-PPS-CAN |
| | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Brian Straight worked for Norfolk Southern Railway Company as a conductor and was seriously injured trying to stop a runaway rail car at the Elkhart rail yard. Straight brings this lawsuit against Norfolk under the Federal Employers' Liability Act (FELA) and the Federal Safety Appliance Act (FSAA), seeking damages for his injuries. Straight has filed a motion for partial summary judgment, claiming that Norfolk Southern is liable to him as a matter of law under the FSAA. But because there are genuine issues of material fact that remain unanswered, the motion for summary judgment is denied.

**Background**

At Norfolk Southern's Elkhart railroad yard in the early morning hours of April 17, 2008, train cars '966 and '292[1] were coupled together and were the westernmost cars on Track 28. At 3:08 a.m., car '648 was shoved into Track 28 from the "hump" on the east end of the yard, but apparently failed to couple with '966/'292. More cars humped into Track 28 behind '648, but there was still no coupling between '966/'292 and '648. At 5:09 a.m., Straight saw the

---

[1] These are abbreviations for the full designations, SOU88966 and SOU88292. The third car involved was SOU88648, abbreviated as '648.

'966/'292 cars standing toward the west end of Track 28, and "kicked" them back to the east in an effort to get them to couple with the string of other cars ending with car '648. But cars '966/'292 and '648 again failed to couple, and '966/'292 began to roll back out. At this point, Straight attempted to manually set the hand brake on the front of '966 and in the process was run over by the rail car.

Straight was severely injured. One of his legs was amputated and he has a number of other serious medical problems resulting from the accident. A few hours after the accident, a Norfolk foreman inspected the couplers on cars '292 and '648 and found both couplers' knuckles in the closed position. In order for two cars to couple, at least one of the knuckles on the two cars must be opened. If both are in the closed position, the cars cannot couple. According to Norfolk, no defects were found in either car's coupler, and both cars later coupled into trains and left the Elkhart Yard without incident.

## Discussion

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelly & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *Id.* at 248. In making this determination, I must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 497 (7th Cir. 1999).

A railroad worker injured on the job has a tort remedy under FELA against his or her railroad employer: "every common carrier by railroad...shall be liable in damages to any person suffering injury while he is employed...for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. §51. A species of absolute liability arises from violations of the FSAA, which imposes a duty on the railroad to outfit its cars with certain safety equipment and features: "[A] failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability – a liability that cannot be escaped by proof of care or diligence." *DeBiasio v. Illinois Central Railroad*, 52 F.3d 678, 683 (7th Cir. 1995), quoting *O'Donnell v. Elgin J. & E. Ry. Co.*, 338 U.S. 384, 390 (1949). "Although the FSAA does not itself create a private cause of action, employees alleging injury resulting from a violation of the FSAA may sue under FELA, 45 U.S.C. §51." *DeBiasio*, 52 F.3d at 683.

One of the safety features required by the FSAA is that railcars be equipped with "couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles." 49 U.S.C. §20302(a)(1)(A). The Supreme Court has held that a plaintiff meets his burden under the FSAA by showing that railcars failed to couple automatically upon impact. *Affolder v. New York C. & St. L. R. Co.*, 339 U.S. 96, 98 (1950). The Seventh Circuit says that "the Act requires automatic coupling

3

equipment and the failure to couple creates the nearly irrebuttable presumption that the Act has been violated." *DeBiasio*, 52 F.3d at 683, quoting *Lisek v. Norfolk and Western Ry. Co.*, 30 F.3d 823, 829 (7th Cir. 1994). Where the FSAA is violated, the railroad cannot invoke the contributory negligence of the employee-plaintiff. This is because FELA provides "[t]hat no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of *any statute enacted for the safety of employees* contributed to the injury or death of such employee." 45 U.S.C. §53 (emphasis added).

Straight contends that the presumption of an FSAA violation arises here because on at least two occasions, cars '292 and '648 failed to couple upon impact. The first of these was at 3:08 a.m. when '648 was first humped into Track 28, and the second occurred later at 5:09 a.m. when '966/'292 were kicked back to meet '648 at the front of the line of cars that had entered the track behind '966 and '292.

In order for railroad cars to couple automatically upon impact, the couplers must be properly set for coupling. As noted above, this requires the "knuckle" on at least one of the cars to be in the open position, and for the "draw bars" on which the couplers are mounted to be properly aligned to make the necessary contact. Draw bars are designed for some lateral movement in order to accommodate rail cars' navigation of curved track. In addition, coupling will not occur if the force of the impact between cars is insufficient. The closure of a knuckle or the skewing of a draw bar may occur in the ordinary course of railroad car operations. *Norfolk and Western Railway Company v. Hiles*, 516 U.S. 400, 412 (1996).

The recognition of these factors affecting "automatic" coupling, even where the coupling equipment is in no way deficient, has led to the availability of affirmative defenses for the railroad in FSAA cases where the failure of automatic coupling is alleged. As the Supreme Court has noted, "[C]ertain preliminary steps, such as ensuring that the knuckle is open, are necessary to proper performance of the coupler and...a failure to couple will not constitute an SAA violation if the railroad can show that the coupler had not been placed in a position to automatically couple." *Hiles*, 516 U.S. at 410. The Supreme Court also observed that the "restriction on failure-to-perform liability logically extends to every step necessary to prepare a nondefective coupler for coupling...including ensuring proper alignment of the drawbar." *Id.*

In addition to the issue of an FSAA violation, the issue of causation remains: "[o]nce the violation is established, only causal relation is in issue." *Carter v. Atlanta & St. Andrews Bay Ry. Co.*, 338 U.S. 430, 434 (1949), quoted in *DeBiasio*, 52 F.3d at 683. "Under FELA, the plaintiff's burden is significantly lighter than in an ordinary negligence case." *Lisek*, 30 F.3d at 832. The railroad is liable if "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury...." *DeBiasio*, 52 F.3d at 685, quoting *Harbin v. Burlington Northern R.R.Co.*, 921 F.2d 129, 131 (7th Cir. 1990). Very recently, the Court of Appeals has underscored the "relaxed" standard of probable cause under FELA, and rejected a requirement of "common-law proximate causation." *McBride v. CSX Transportation, Inc.*, 598 F.3d 388, 405-406 (7th Cir. 2010). In *McBride*, after reviewing the history of cases interpreting FELA's causation requirement, the Seventh Circuit affirmed a jury instruction stating that FELA liability requires only a finding that the railroad's negligence "played a part – no matter how small – in bringing about the injury." *Id.* at 406.

5

Attempting to apply these legal principles here, it becomes clear that there exist a number of disputes of fact that preclude summary judgment. To begin with, as Norfolk Southern pointed out at oral argument, Straight is unable to cite to any case in which a court found an FSAA violation for failure to couple as a matter of law at the summary judgment stage. More to the point, with respect to the question whether the couplers on '292 and '648 were properly set for coupling, Straight testified that he opened the knuckle on '292 before kicking '966/'292 back east, that he made sure the drawbar on '292 was properly aligned, that he could see that the drawbar on '648 was properly aligned, that he watched the kickback, and that he both saw and heard the impact between '292 and '648.

By three means, Norfolk Southern challenges whether this testimony supports the conclusion that the couplers were properly set. The first is circumstantial evidence that might support the contrary conclusion that the couplers were not properly set to couple at the time '292 met '648 on the kick-back. The evidence includes that both knuckles were found closed after the accident, that no defects were found in the couplers in the post-accident inspection, and that the cars later coupled normally and left the railyard without incident. The second species of challenge is Norfolk Southern's expert testimony that Straight was too far away to have clearly seen the alignment of the '648 drawbar at the time of day in question, and that Straight could not have seen and heard the impact as he claims because of the distance and the noise of the railyard. Finally, Norfolk Southern challenges Straight's credibility through expert testimony challenging Straight's account of how he attempted to set the hand brake and fell to the track.

These competing contentions, and the evidence supporting each, establish that there are disputed issues of material fact as to whether the couplers on '292 and '648 were properly set to

couple when they met after Straight kicked cars '966/'292 east on Track 28. The disputed facts preclude a summary judgment determination that the failure to couple establishes a violation of the FSAA's automatic coupler requirement, and that Norfolk Southern cannot prevail on its affirmative defenses that the failure to couple resulted from misaligned drawbars, closed knuckles, or an impact of insufficient force.

In sum, if every reasonable inference is drawn in favor of Norfolk Southern as the non-moving party, I must conclude that a reasonable jury could (and might) return a verdict based on a finding that the couplers were not properly set for coupling, so that their failure to couple did not constitute a violation of the FSAA. Although this is no prediction of the outcome of a jury trial, it does foreclose judgment as a matter of law on the motion for partial summary judgment seeking a determination of FSAA liability in plaintiff Straight's favor.

ACCORDINGLY, Plaintiff Brian Straight's **Motion for Partial Summary Judgment** [DE 71] is DENIED.

So ordered this 13th day of December, 2010

    /s/ Philip P. Simon
Chief Judge Philip P. Simon
United States District Court
Northern District of Indiana